# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Thomas Engineering Company Inc.,

                  Plaintiff,

Civ. No. 10-902 (RHK/JJK)
**MEMORANDUM OPINION AND ORDER**

v.

Twin City Fire Insurance Company,

                  Defendant.

Janel M. Dressen, Anthony Ostlund Baer & Louwagie PA, Minneapolis, Minnesota, for Plaintiff.

Amy J. Woodworth, Meagher & Geer, PLLP, Minneapolis, Minnesota, for Defendant.

## INTRODUCTION

In this insurance-coverage dispute, Plaintiff Thomas Engineering Company, Inc. ("Thomas Engineering") claims that Defendant Twin City Fire Insurance Co. ("TCFI") breached the terms of its insurance policy by refusing to defend Thomas Engineering and its officers and directors in an underlying state-court lawsuit brought by Peter H. Voth. Thomas Engineering seeks coverage from TCFI for expenses and losses incurred defending against the lawsuit. TCFI now moves for summary judgment, asserting that it had no duty to defend under the Policy because an "Insured v. Insured" exclusion bars coverage for the claims brought in the underlying action. For the reasons set forth below, the Court will grant TCFI's Motion.

## BACKGROUND

The material facts are not in dispute. Thomas Engineering is a Minnesota company that performs precision metal stamping. At all relevant times, Thomas Engineering was insured by TCFI under Policy No. 00KB 0235803-07 ("the Policy"), which included coverage for Directors, Officers, and Entity Liability ("DO&E coverage"). It paid an annual premium of $4,000 for this coverage, of which $3,200 was for directors-and-officers coverage and $800 was for entity coverage. The coverage provides as follows: [1]

    **I. Insuring Agreements**

        **(A) Insured Person Liability**

        The **Insurer** shall pay **Loss** on behalf of the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during the **Policy Period** . . . for a **Wrongful Act** by the **Insured Persons** . . . .

        **(B) Corporate Reimbursement**

        The **Insurer** shall pay **Loss** on behalf of an **Insured Entity** that such **Insured Entity** has, to the extent permitted or required by law, indemnified the **Insured Persons** resulting from an **Insured Person Claim** first made against the **Insured Persons** during **the Policy Period** . . . for a **Wrongful Act** by the **Insured Persons**.

        \* \* \*

        **(D) Derivative Demands**
        The **Insurer** shall pay **Investigation Costs** on behalf of an **Insured Entity** that the **Insured Entity** incurs resulting from a **Derivative Demand** first made during the **Policy Period** . . . .

---

[1] The bold emphasis appears in the original Policy, signifying defined terms.

(Tortora Aff. Ex. F, 00357.)  Simply put, TCFI covers claims against insured persons for wrongful acts, as well as losses an insured entity incurs as a result of a claim against an insured person (i.e., if the entity indemnifies the insured person).  Losses are defined to include legal fees and expenses incurred investigating and defending against a claim

For purposes of the DO&E coverage, "**Insureds**" include any "**Insured Person**." (Id. at 00359.)  The Policy defines an "**Insured Person**" as "any: (1) **Manager**; or (2) **Employee**."  (Id. at 00358.)  A "**Manager**" is then defined as: "any natural person who is a past, present, or future: (1) duly elected or appointed director, officer, member of the board of managers or management committee member of an **Insured Entity**."  (Id. at 00347.)

The Policy also contains an "Insured v. Insured" exclusion.  In its original form, this exclusion provided:

> The **Insurer** shall not pay **Loss** for any **Claim**
> \* \* \*
> (F) by or on behalf of any **Insureds**, provided that this exclusion
> shall not apply to any **Claim:**
> (i) that is a **Derivative Action**

(Id. at 00360.)  It was modified by an Endorsement that became effective on September 1, 2006, which provided:

> Exclusion **(F)** is deleted and replaced by the following:
> (F) brought or maintained by or on behalf of any **Insureds** (in any capacity), provided that this exclusion shall not apply to any **Claim**
> (i) that is a **Derivative Action** or a **Derivative Demand**

(Id. at 00377.)  The exclusion removes coverage from an otherwise-covered claim if someone who is also insured under the Policy is making the claim.

3

Exceptions to the "Insured v. Insured" exclusion restore coverage to some otherwise excluded claims, however, including claims defined as "Derivative Actions" or "Derivative Demands." (Id. at 00360, 00377.) The Policy defines "Derivative Action" and "Derivative Demand" as follows:

> (B) "**Derivative Action**" means any civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** made on behalf of, or in the name or the right of, an **Insured Entity** by any security holders of such **Insured Entity**, in their capacity as such, if such proceeding is made without the assistance, participation or solicitation of any **Manager**.
>
> (C) "**Derivative Demand**" means any written demand by any security holders of an **Insured Entity**, in their capacity as such, upon the board of directors or managers of such **Insured** entity to bring a civil proceeding against a **Manager** for a **Wrongful Act** of such **Manager** if such demand is made without the assistance, participation or solicitation of any **Manager**.

(Tortora Aff. Ex. F at 00358.)

Thomas Engineering was founded by William J. Thomas. Voth, Thomas's brother-in-law, has worked for the company since 1965. At all relevant times, Thomas Engineering was owned by only two shareholders—Thomas and the Peter H. Voth Revocable Trust ("the Voth Trust"). Voth was Trustee, grantor, and sole beneficiary of the Voth Trust, and he could modify, amend, or revoke it at any time. (Id. Ex. A ¶ 6.) Thomas owned 571 shares, while the Voth Trust owned 329 shares (or 35.56%) of the company's stock. The company's board of directors had three members: Voth, Thomas, and Thomas's wife, Susan Lien Thomas. Starting in 2005, Voth began to be dissatisfied with how the Thomases were managing Thomas Engineering. In November 2007, the Thomases removed Voth from his position as an officer of the company. After Voth's

4

removal, Thomas and his wife were Thomas Engineering's only officers, serving as CEO and COO and Co-Chairmen of the Board.

In April 2008, Voth commenced a lawsuit against the Thomases, alleging that they had engaged in self-dealing and were generally mismanaging Thomas Engineering, causing detriment to the company (and to Voth).[2] The action was brought by "Peter H. Voth individually and as Trustee under the Peter H. Voth Revocable Trust Agreement . . . and derivatively on behalf of [Thomas Engineering]." (Tortora Aff., Ex. A.) It purported to be "a minority shareholder and derivative action." (Id. ¶ 1.)

By letter dated October 27, 2008, Thomas Engineering tendered the lawsuit's defense to TCFI. TCFI denied coverage, asserting that it had no duty to defend or indemnify Thomas Engineering because the "Insured v. Insured" exclusion barred coverage. Thomas Engineering sought reconsideration of the denial, but TCFI confirmed its decision and continued to deny coverage, again asserting that the "Insured v. Insured" exclusion applied.

After nearly two years of litigation, the underlying lawsuit was settled in February 2010. Thomas Engineering does not seek reimbursement from TCFI for the amount of the settlement. However, it does bring the instant action against TCFI for breach of contract and declaratory judgment, seeking to recover over $700,000 in defense costs and expenses which it argues TCFI was obligated to pay under the Policy. TCFI

---

[2] Specifically, the Complaint alleged ten counts: (1) Violation of Minn. Stat. § 302A.751; (2) Breach of Duty of Loyalty; (3) Violation of Fiduciary Duty; (4) Unjust Enrichment; (5) Civil Conspiracy; (6) Aiding and Abetting Breach of Fiduciary Duty and Duty of Loyalty; (7) Breach of Contract; (8) Personal and Business Defamation; (9) Injunctive Relief (Indemnification); and (10) Attorneys' Fees and Damages. (Tortora Aff. Ex. A.)

counterclaims, seeking a declaration that it had no coverage obligation and did not breach the Policy by refusing to defend Thomas Engineering in the underlying lawsuit due to the exclusion. TCFI now moves for summary judgment.

## STANDARD OF REVIEW

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986). The moving party bears the burden of showing that the material facts in the case are undisputed. Id. at 322; Mems v. City of St. Paul, Dep't of Fire & Safety Servs., 224 F.3d 735, 738 (8th Cir. 2000). The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party. Graves v. Ark. Dep't of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000); Calvit v. Minneapolis Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

## ANALYSIS

State law governs the interpretation of insurance policies. Nat'l Union Fire Ins. Co. of Pittsburgh v. Terra Indus., Inc., 346 F.3d 1160, 1164 (8th Cir. 2003). Under

Minnesota law,[3] interpreting an insurance policy is a question of law for the Court. Watson v. United Servs. Auto. Ass'n, 566 N.W.2d 683, 688 (Minn. 1997). When policy language is unambiguous, it is interpreted "in accordance with its plain and ordinary meaning." Ill. Farmers Ins. Co. v. Glass Serv. Co., 683 N.W.2d 792, 799 (Minn. 2004). When an insurance policy's language is ambiguous, however, the Court will generally construe that language against the drafter and in favor of the insured. Nathe Bros., Inc. v. Am. Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000). Furthermore, when an insurer argues that an exclusion bars coverage, the burden is on the insurer to establish that the exclusion applies. SCSC Corp. v. Allied Mut. Ins. Co., 536 N.W.2d 305, 311–14 (Minn. 1995).

An insurer's duty to defend is broader than the duty to indemnify in three ways: "(1) the duty to defend extends to every claim that 'arguably' falls within the scope of coverage; (2) the duty to defend one claim creates a duty to defend all claims; and (3) the duty to defend exists regardless of the merits of the underlying claims." Wooddale Builders, Inc. v. Md. Cas. Co., 722 N.W.2d 283, 302 (Minn. 2006) (citing Meadowbrook, Inc. v. Tower Ins. Co., 559 N.W.2d 411, 415–19 (Minn. 1997)). Thus, "[a]n insurer seeking to avoid a duty to defend has the burden of demonstrating that all claims fall outside the scope of the insurance policy." Westchester Fire Ins. Co. v. Wallerich, 527 F. Supp. 2d 896, 901 (D. Minn. 2007) (Kyle, J.) (emphasis added) aff'd in part, rev'd in part on other grounds, 563 F.3d 707 (8th Cir. 2009).

---

[3] Neither party argues that the law of a state other than Minnesota applies to their dispute; "[t]hus, because [Minnesota] is the forum state, its laws apply by default." BBSerCo, Inc. v. Metrix Co., 324 F.3d 955, 960 n.3 (8th Cir. 2003).

Neither party disputes that Voth was an "Insured" under the Policy's DO&E coverage. At the time he filed the underlying action, Voth was a director and former officer of the company, bringing him within the definition of a "Manager," which makes him an "Insured Person" and thus an "Insured." Thus, any lawsuit against Thomas Engineering or one of its officers or directors brought by Voth or on his behalf falls squarely within the "Insured v. Insured" exclusion.

Here Voth brought the underlying lawsuit not only in his individual capacity, but also as trustee of the Voth Trust and on behalf of Thomas Engineering itself. On this basis, Thomas Engineering argues that some claims in the underlying action are not excluded. Indeed, it is true that if even one of the underlying claims were covered, TCFI would have a duty to defend against all the claims. E.g., Mut. Serv. Cas. Ins. v. Luetmer, 474 N.W.2d 365, 368 (Minn. Ct. App. 1991) ("If the complaint against the insured includes multiple claims, and one of the claims, if proved, would require the insurer to indemnify, the insurer must defend against all claims."). In this Court's view, however, none of the claims in the underlying action escapes the "Insured v. Insured" exclusion.

Thomas Engineering argues first that since the Voth Trust was a shareholder rather than a director or officer, and since at least some of the claims in the underlying lawsuit were asserted by Voth as Trustee on behalf of the Voth Trust rather than by Voth himself, the exclusion does not bar coverage. The Court finds this argument flawed for two reasons. First, although Voth's shares in Thomas Engineering are technically held by the Voth Trust, they are owned by Voth as a practical matter. By Voth's own assertion (in the underlying Complaint) he is the grantor, sole beneficiary, and trustee of the Voth

8

Trust, and it is completely revocable and modifiable by him at any time.[4] The Eighth Circuit confirms that, at least for tax purposes, the grantor of a revocable trust is treated as the owner of the trust corpus. See Swanson v. C.I.R., 518 F.2d 59, 63 (8th Cir. 1975).[5] Moreover, even if the Voth Trust's ownership of Thomas Engineering stock is completely distinguishable from Voth's ownership, the underlying action was still brought by Voth "as Trustee under the Peter H. Voth Revocable Trust Agreement." The "Insured v. Insured" exclusion applies to claims brought by an Insured "in any capacity"—thus, claims brought by Voth in his capacity as Trustee of the Voth Trust fall within the exclusion.[6]

Thomas Engineering's second argument is that the underlying lawsuit includes derivative-action claims brought on behalf of the company itself, bringing them within the derivative-action exception to the "Insured v. Insured" exclusion. However, this argument fails for similar reasons. Any claims asserted on behalf of Thomas Engineering in the underlying action were asserted by Voth as a representative of Thomas

---

[4] Voth himself appeared confused about whether he or the Voth Trust was the "owner" of his Thomas Engineering shares. When asked: "You're not a shareholder, true?" Voth replied: "Well, I—technically, I guess, but, as a trustee of the trust or whatever, I'm virtually the shareholder." (Tortora Aff., attachment to Ex. 7 (Voth Dep.) at 27–28.)

[5] Indeed, without delving into the intricacies of trust law, the Court harbors some doubt whether the Voth Trust can be treated as separate from Voth for *any* purpose, in light of the complete control Voth appears to have retained over it.

[6] Thomas Engineering argues that the Endorsement, which added the "in any capacity" language to the "Insured v. Insured" exclusion, should not be given effect. Its argument is based on the date on the Endorsement, which appears to simply reflect the effective date of the Policy to which the Endorsement applies. In the Court's view, however, the Endorsement is part of the Policy and must be considered in determining whether there is coverage. See Bobich v. Oja, 104 N.W.2d 19, 24–25 (Minn. 1960) ("The endorsements or riders attached to an insurance contract are part of the contract, and the endorsements and the policy must be construed together.").

Engineering. Since the Policy excludes claims brought by an Insured "in any capacity" (as discussed above), claims asserted by Voth as Thomas Engineering's representative are excluded just as claims asserted by Voth as trustee are excluded.

Additionally, even if the claims on Thomas Engineering's behalf were not *brought by Voth* in some capacity,[7] they would still fall outside the derivative-action exception to the "Insured v. Insured" exclusion because they were brought *with Voth's assistance* and participation. The Policy's definitions of both derivative actions and derivative demands require that such claims be "made without the assistance, participation, or solicitation of any **Manager**." Claims brought by shareholders with the assistance of a former director or officer have been deemed excluded by an "Insured v. Insured" exclusion with similar policy language. See Voluntary Hosps. of Am., Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 859 F. Supp. 260, 263 (N.D. Tex. 1993) (excluding coverage because a former director and officer of a subsidiary company assisted shareholders in bringing claims where the policy's "Insured v. Insured" exclusion barred coverage for claims brought "with[] the solicitation of, or assistance of, or active participation of, or intervention of, any Insured"), aff'd, 24 F.3d 239 (5th Cir. 1994) (Table).

Every count in the underlying complaint purports to assert claims by either "Voth" or "Voth, the Trustee, and Thomas Engineering;" none names only Thomas Engineering. (Tortora Aff. Ex. A ¶¶ 58, 60, 63, 70, 72, 75, 78, 82, 87, 94.) To find that Voth—who was asserting claims on behalf of and along with Thomas Engineering—was not *at least*

---

[7] Thomas Engineering acknowledged at oral argument that Voth was pursuing all the underlying claims in various capacities.

assisting or participating in those claims defies reason and common sense. Claims by Thomas Engineering in the underlying action fall outside the derivative-action exception by definition because of Voth's participation and assistance, and the exclusion remains applicable.

Thomas Engineering relies on Conklin Co. v. National Union Fire Ins. Co., No. 4-86-860, 1987 WL 108957, at *7–8 (D. Minn. Jan. 28, 1987) (MacLaughlin, J.), asserting that since the underlying action here was not collusive, the "Insured v. Insured" exclusion should not apply because its purpose is to prevent collusive lawsuits. However, "where such exclusions are clear and susceptible to only one fair interpretation, courts generally apply them pursuant to their plain terms." Miller v. ACE USA, 261 F. Supp. 2d 1130, 1139 (D. Minn. 2003) (Montgomery, J.) (applying "Insured v. Insured" clause despite its underlying purpose where its language was explicit and unambiguous). Conklin looked to the underlying purpose of the exclusion only after finding it ambiguous. 1987 WL 108957, at *7–8. The Court finds no such ambiguity here.

Thomas Engineering also argues that an allocation clause in the Policy creates ambiguity, relying on numerous cases for the proposition that an allocation clause limits an "Insured v. Insured" exclusion's application.[8] However, these were all mixed-claim

---

[8] The allocation clause here governs apportionment of losses where claims are partly covered and partly uncovered. As Thomas Engineering points out, this Court has previously held that "for an insured to avoid the 'Insured v. Insured' exclusion in a D & O policy, there must be an allocation clause in the policy that specifically addresses coverage for claims brought by both insureds and non-insureds in an underlying lawsuit." Westchester, 527 F. Supp. 2d at 905. Yet this does not imply that an allocation clause *necessarily* allows the insured to avoid the exclusion. The clause here does not specifically address coverage for claims brought "by both insureds and non-insureds;" rather, it contemplates claims "includ[ing] both covered and uncovered matters" or "against both covered and uncovered parties." (Tortora Aff. Ex. F, at 00352).

11

cases in which some (if not most) of the plaintiffs were clearly non-Insureds. None addresses an Insured who brought multiple claims in different capacities and participated in every claim, as Voth did here. Courts must "fastidiously guard against the invitation to create ambiguities where none exist." Noran Neurological Clinic, P.A. v. Traveler's Indem. Co., 229 F.3d 707, 709 (8th Cir. 2000) (applying Minnesota law) (citations omitted). In the Court's view, the Policy at issue here—including the "Insured v. Insured" exclusion—is unambiguous. By its plain language, it excludes coverage of all claims in the underlying lawsuit because each is brought by Voth (in some capacity) or with Voth's assistance and participation.

Despite the Court's conclusion that the Policy unambiguously excludes coverage, Thomas Engineering's final argument merits discussion. It asserts that interpreting the Policy to exclude coverage, in the factual setting here, makes the Policy's coverage of derivative claims illusory. A derivative claim can only be asserted by a shareholder, and Thomas Engineering had no shareholders who were not also directors or officers (and thus, "Insureds" under the Policy), a fact known to TCFI when it wrote and sold Thomas Engineering the Policy—a Policy which included derivative-action coverage. Interpreting the Policy according to its plain language results in a situation in which Thomas Engineering could never utilize its derivative-action coverage, at least not with its current ownership and corporate structure. Thomas Engineering argues that the illusory-coverage doctrine prohibits this result.

The illusory-coverage doctrine disfavors interpretations of insurance policies resulting in the denial of all coverage—which would be the result here if the Court adopts

12

TCFI's interpretation of the "Insured v. Insured" exclusion and derivative-action exception. See Piper Jaffray Cos., Inc., v. Nat'l Union Fire Ins. Co. of Pittsburgh, 967 F. Supp. 1148, 1157 (D. Minn. 1997). The doctrine "operates to qualify the general rule that courts will enforce insurance contracts as written." Jostens, Inc. v. Northfield Ins. Co., 527 N.W.2d 116, 118 (Minn. Ct. App. 1995). However, "[t]he fact that an insured's circumstance is outside a policy's realm of coverage does not, without more, render the policy illusory." Bancinsure, Inc. v. Marshall Bank, 453 F.3d 1073, 1076 (8th Cir. 2006).

Under Minnesota law, the doctrine "is best applied . . . where part of the premium is *specifically allocated* to a particular type or period of coverage and that coverage turns out to be functionally non-existent." Jostens, 527 N.W.2d at 118 (emphasis added); accord United Fire & Cas. Co. v. Fid. Title Ins. Co., 258 F.3d 714, 719 (8th Cir. 2001) (quoting Jostens for the proposition that the illusory coverage doctrine applies "*only* when part of the premium is specifically allocated to a particular type or period of coverage" (emphasis added)).

Here, both parties agree that Thomas Engineering paid a $4,000 premium for the DO&E coverage in the Policy, of which $3,200 was allocated to directors & officers coverage and $800 was for entity coverage. The directors and officers portion covered many risks besides derivative-action claims. This Court has held that coverage is not illusory where an insured "has not shown that it paid a specific premium for coverage under [a specific clause]." W3i Mobile, LLC v. Westchester Fire Ins. Co., Civ. No. 08-6370, 2009 WL 3379198, at *4 (D. Minn. Oct. 20, 2009) (Ericksen, J.); accord, e.g., Kabanuk Diversified Invs., Inc. v. Credit Gen. Ins. Co., 553 N.W.2d 65, 73 (Minn. Ct.

13

App. 1996) (upholding court's refusal to apply the illusory coverage doctrine where "[n]o evidence was presented that any premium was *specifically allocated* to coverage for non-employee assault or battery claims" (emphasis added)). In the Court's view, Thomas Engineering's premium for DO&E coverage is allocated too generally to trigger the illusory coverage doctrine.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that: (1) TCFI's Motion for Summary Judgment (Doc. No. 18) is **GRANTED**;[9] (2) Thomas Engineering's Complaint (Doc. No. 1) is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.


Dated: December 2, 2010 
        s/Richard H. Kyle
        RICHARD H. KYLE
        United States District Judge

---

[9] This effectively resolves TCFI's counterclaim as well (Doc. No. 7), since the counterclaim seeks a declaration that there is <u>no</u> duty to defend the underlying lawsuit under the Policy. By this Order, the Court finds that TCFI did not breach its contract with Thomas Engineering and owed no duty to defend under the Policy.